**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: CALVERT VILLAGE LIMITED
PARTNERSHIP,
<u>Debtor.</u>

THE CADLE COMPANY II,
INCORPORATED,
<u>Plaintiff-Appellant,</u>                                      <u>No. 99-1383</u>

v.

CALVERT VILLAGE LIMITED
PARTNERSHIP; THE MANUFACTURERS
LIFE INSURANCE COMPANY (USA);
HARRY STERN, Trustee,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
J. Frederick Motz, Chief District Judge.
(CA-98-3937-JFM, BK-96-11594)

Argued: December 2, 1999

Decided: February 2, 2000

Before WIDENER and MICHAEL, Circuit Judges, and
James H. MICHAEL, Jr., Senior United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Dismissed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** C. Edward Hartman, III, HARTMAN & EGELI, Annapolis, Maryland, for Appellant. Bruce Wayne Henry, HENRY & O'DONNELL, P.C., Fairfax, Virginia, for Appellees. **ON BRIEF:** Eric J. Davis, HARTMAN & EGELI, Annapolis, Maryland, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Cadle Company II, Inc. (Cadle) appeals a district court order affirming the confirmation of Calvert Village Limited Partnership's Chapter 11 bankruptcy reorganization plan. Because the reorganization plan has been consummated (and rights, especially those of third parties, have been altered in the process), we dismiss the appeal as moot.

I.

The debtor, Calvert Village Limited Partnership (Calvert), owns the Calvert Village Shopping Center in Prince Frederick, Maryland. The shopping center consists of three parcels: (1) the "main mall parcel" of 9.32 acres, containing the main shopping center and mini mall; (2) the "Ames parcel" of 4.22 acres, containing one building occupied by medical tenants; and (3) the "theater parcel" of 2.35 acres, containing a movie theater. When the bankruptcy petition was filed, Capitol Bankers Life Insurance Co. (Capitol) and Cadle were the primary creditors. Capitol had two notes secured by a first deed of trust on the main mall parcel and the Ames parcel. Cadle held a wrap-around obligation secured by a second deed of trust on the main mall and Ames parcels and a first deed of trust on the theater parcel.[1] Harry Stern, a

_____

[1] Under the wrap structure Cadle received a monthly payment based on an amount equal to its loan plus Capitol's loan. Cadle then remitted Cap-

2

third creditor, held a third lien on the main mall and Ames parcels and a second lien on the theater parcel. A number of creditors had unsecured claims.

On March 6, 1996, Cadle filed an involuntary petition under Chapter 7 against Calvert. The parties thereafter agreed to convert the case to a Chapter 11 proceeding. After rejecting Calvert's First Amended Plan of Reorganization, the bankruptcy court held a confirmation hearing on the Second Amended Plan on August 25, 1998.[2] On September 18, 1998, Calvert filed a First Modification to the Second Amended Plan. The modification improved Cadle's position, increasing the net monthly payment it received from $13,377 to $24,787. After a hearing the bankruptcy court confirmed the Second Amended Plan as Modified on October 27, 1998. Cadle filed a Motion for Stay of Execution of the Confirmation Order, which the bankruptcy court denied on November 10, 1998. Cadle did not appeal this denial.

On November 6, 1998, Cadle appealed the confirmation order to the district court. The district court affirmed the order of the bankruptcy court on February 16, 1999. Cadle did not seek nor receive a stay of the Plan in either the district court or in this court. Cadle filed a timely appeal of the district court's order on March 16, 1999.

Since confirmation, Calvert has executed the Plan. It has made payments to Capitol and Cadle.[3] Harry Stern has converted his debt interest to an equity interest, and Calvert's Partnership Agreement has been amended to admit Stern as a limited partner. With respect to the unsecured claims, Calvert has paid in full those claimants who elected lump sum treatment and has made installment payments on the remaining claims. In addition, Calvert's Partnership Agreement has been amended (1) to convert the prior limited partnership interests into two classes and (2) to convert the general partnership interest into

_____

itol's payment to it. Capitol had a short amortization term, so Cadle only received part of its monthly interest in cash. The remaining interest due Cadle was added to the balance of its loan.

[2] Prior to the confirmation hearing, Manulife USA (Manulife) succeeded in interest to Capitol.

[3] Since confirmation, Capitol has succeeded in interest to Manulife.

3

a limited partnership interest and a smaller general partnership interest.

II.

Calvert has filed a motion to dismiss this appeal under the doctrine of "equitable mootness." We have recognized that short of constitutional mootness, "a case may become moot under`a melange of doctrines relating to the court's discretion in matters of remedy and judicial administration.'" Central States, Southeast and Southwest Areas Pension Fund v. Central Transp., Inc., 841 F.2d 92, 95 (4th Cir. 1988) (quoting Chamber of Commerce v. United States Dep't of Energy, 627 F.2d 289, 291 (D.C. Cir. 1980)). In particular, a court should avoid rendering a decision when it lacks the power to provide effective relief. See Central States, 841 F.2d at 96.

In the bankruptcy setting, "dismissal of the appeal on mootness grounds is required when implementation of the plan has created, extinguished or modified rights, particularly of persons not before the court, to such an extent that effective judicial relief is no longer practically available." Id. Here, because Cadle seeks to reverse the reorganization plan, affording relief would "require the undoing of financial transactions involving third parties, not participants in this litigation," and "would only `create an unmanageable, uncontrollable situation for the Bankruptcy Court.'" Id. (quoting In re Roberts Farms, Inc., 652 F.2d 793, 797 (9th Cir. 1981)).

Once the bankruptcy court denied Cadle's Motion for Stay of Execution of the Confirmation Order, Cadle did not appeal the denial nor seek a stay in either the district court or in this court. As a consequence, "implementation of the confirmed plan proceeded apace." In re Public Serv. Co., 963 F.2d 469, 472 (1st Cir. 1992). Calvert has made payments to Capitol as well as to the unsecured creditors who are not parties to this case. Harry Stern's interest has been converted to an equity interest, and he has been admitted as a limited partner. Finally, the Partnership Agreement has been amended to alter the interests of the limited partners and the general partner. While Cadle's failure to obtain a stay alone is an insufficient ground for finding mootness, the resulting implementation of the Plan has altered rights

4

(particularly third-party rights) to such an extent that dismissal of the appeal is proper. <u>See id.</u> at 473; <u>Central States</u>, 841 F.2d at 96.

Because the Reorganization Plan has been consummated (and rights sufficiently altered), we grant Calvert's motion to dismiss this appeal as moot.

<u>DISMISSED</u>

5